Your Honor, there were a couple of issues that we brought before the court regarding his conviction for 1326, illegal reentry after deportation. One of the ones that I'd like to hone in on is a claim that his Miranda rights were violated and thus his due process rights. One of the, what happened in this case is, and it came out during the motion hearing and also during the direct and cross of the agent, in this case, the CBP agent outfleet, was that Mr. Arce-Rodriguez was placed under arrest prior to him being questioned, which is in violation. And this court has stated that the circumstances of what occurs at the time is something that's looked at at a very case-by-case basis to determine whether or not the person was in custody and whether or not there was any conduct that rised to the level of an interrogation, which would be conduct that would be likely to elicit incriminatory responses. And along the border, you know, the court has established that there is, the definition of custody is much stricter than it is in other areas, as is... And counsel, how do you distinguish those cases from the circumstances that we have here? Aren't they very similar? Well, Your Honor, in some cases that they are similar, but I think in this specific case we have testimony. In those cases, there wasn't any testimony by the actual officer that there was an arrest. It was, they all claim that it was an investigatory stop and Sivantes Flores, which counsel had brought up in his brief. The reason that the agent went after this particular person was because when the person saw his vehicle, he took off running, he went and got him, apprehended him, and then proceeded to do an investigatory questioning. In this case, the agent had stated that he already had assumed that Mr. Arcio Rodriguez was an alien. But didn't he also have to pursue him in this case? He did actually pursue him, Your Honor. And he handcuffed him and then questioned him. But he also testified in this case... He handcuffs him after he ran away. Correct. I mean, he stops him. So it wasn't like he saw him running, he pursued him. He stops him to talk to him. And your client runs away. And at that point, you know, the officer catches up with him and puts him in handcuffs, which... I think this one is a little bit similar to Sivantes Flores in that way in that the officer had, you know, allegedly yelled who he was and the person, my client, had allegedly ran off. And then the agent pursued him, apprehended him, handcuffed him, and then brought him to a different location versus they were talking and then my client ran off. However, when asked specifically whether or not my client was free to leave, he stated that he wasn't. He stated that he was under arrest prior to him asking any questions. And he stated that he agreed that the questions that he asked him would elicit information that would be used against him later in a criminal case, and it was. Wasn't this all historical, identifying information, biographical information, which under case law is not covered by Miranda? It's all name, you know, it's all identification information to make sure he is in fact who he claims to be. Well, I think that in this case it is because the officer stated that he arrested him first and the information that he was... It doesn't matter. If it's not covered by Miranda, he could be under arrest. If it's biographical information, our cases say, even if it is otherwise custodial, you don't need to give Miranda warnings to ask people biographical information. It's an independent ground. Why isn't all the information here of that nature? Well, in this case, the information that he elicited as in where he was born and where he was from, i.e. where he was from and coming from, essentially, was used to establish the actual 1326. So it was their asking... It's perfectly okay. If it's not covered by Miranda, then you can use it. It's just one of those things, you know. The question is, why isn't this the kind of information that is covered by the exception for biographical information? We're on the same page, right? We know the cases, right? Berkheimer v. McCarthy, right, for a Supreme Court case? Yes, Your Honor. I understand that it is biographical information, but I think in... Are you arguing that if it's biographical information that is an element of a crime or relevant to the crime... Yes, Your Honor. ...it gives him some other biographical information? Yes. In this case, he did ask him information that was used to establish an element of the offense. You didn't file a reply brief, right? No, Your Honor. So the government makes this argument in the red brief. You don't present any case law. Do you have case law that says, makes this argument or that supports the argument that if it's incriminating biographical information, it's outside of the exception? Well, Your Honor... I mean, it would make sense if such a thing would exist, but I'm not aware of any. Well, I think what I had relied on is basically the information that says if incriminating information is going to be elicited, that Miranda should apply. And in this case, his alienage is an element of the offense. Well, that's the argument. I'm just saying you didn't file a brief with any cases. I mean, it's a plausible argument, but I'm not aware of any cases supporting it that says if it falls under the biographical exception. I mean, clearly, figuring out a place of birth... I mean, let's say it was not an element of a crime. That's biographical information. It's the kind of thing that helps identify the person as being exactly the right individual, right? Is there some case law that says that, well, if it's incriminating, it falls outside of that exception? I think the case law just states incriminating in general. When dealing with biographical information? Well, in this case, I'm not sure whether or not... I think we'd have to define whether or not his alienage would be simply biographical information, since it is an element of the offense of the crime that... Why not? I mean, you know, it's a sort of place, date of birth, place of birth that all help identify who you are. There could be lots of other people with the same name. It's the kind of thing one frequently gets asked in, like, credit card applications and the like to make sure you are the right person. Why isn't that biographical information just like anything else? I think, again, because of the way that it's used in the specific offense that he was charged with. If he had been charged with drug trafficking, for example, perhaps, and that's not an element of the offense, then that would be strictly biographical. So something that's otherwise biographical information becomes non-biographical because it's incriminatory? I believe so, Your Honor. Okay, what case do you have supporting that? Well, I think just the information as far as Terry v. Ohio, etc., that have stated that if they're going to elicit incriminating information, then Miranda would apply. And I think that what is incriminating information is determined on a case-by-case basis. Thank you, counsel. Thank you. I'll reserve my rest of the time if I can. Good morning, Your Honor. Cora Mantai on behalf of the United States for the Epilee. The District Court, regarding the first issue raised in the opening brief, the District Court properly admitted at trial the defendant's field statements and correctly found that no Miranda warnings were required because the questioning was not part of a custodial interrogation. Is it correct that counsel said that the officer testified it was an arrest? That is not correct. That misstates the testimony a little bit. On page 23 of the briefing, the government cites excerpts of the records 78 through 79. The agent testified... 78 through 79, did you say? Correct. I believe the testimony from the agent was that he believed that he had probable cause... You believe? You don't have the excerpts with you? Belief is for church. We're in court. The record speaks here. I'm on page 78. Which line? So on 78, line 24, it starts, Agent Outfoot, is it true that you have authority to arrest in the field for illegal drugs and illegal presence in the United States? Yes. Prior to establishing that the defendant was not a United States citizen, did you have probable cause to know that he was in the United States illegally? And that is the extent of the testimony as far as the distinction between arrest and probable... And he says yes. Correct. And the government, as the government pointed out in its... But he didn't say anything more than that. He only said he had probable cause to make an arrest, not that he did make an arrest. That's correct. That's correct, Your Honor. But what would have made it into an arrest, in your opinion? I mean, you put him in handcuffs, you brought him back to another location, he began interviewing him. Where do you draw the line between simply a temporary investigative stop and an arrest? In this case, Your Honor, it would be the government's position that an arrest would have occurred upon the defendant's inculpatory field statements. The standard is whether a reasonable, innocent person in such circumstances would conclude that after brief questioning he or she would not be free to leave. So under that standard, it seems to me that an arrest would be triggered perhaps at the point where the defendant admits that he's not a citizen in the United States, or even later when the defendant is being transported actually to the station at that point. Well, the officer said that he wasn't free to leave, correct? That's correct. So it's not just whether you feel free to leave, is it? I'm sure that Mr. Arce Rodriguez didn't feel free to leave either. You're absolutely right, Your Honor. In fact, the Medina Villa case points that out in interpreting the USA v. Galindo Gallegos. In Medina Villa, the court pointed out that the defendant in Galindo Gallegos probably didn't feel that he was free to leave. And the fact that basically during this peristep he wouldn't have been able to leave. But what difference does it make if the person who is arrested provides information about where they're from in terms of whether or not it becomes a custodial situation for Miranda purposes? I believe it goes back to, again, that standard that the government cited, whether a reasonable person would believe that they could leave at that point. Because presumably after the inculpatory statement is made, he or she, a reasonable person, would not feel free to leave. At that point they've admitted to essentially committing a crime in the United States by being in the country illegally. Is being in the country illegally a crime? No, Your Honor. Just presence alone might establish a civil violation, but for the crime of illegal reentry you would have to assume. Right, but that fact was not known to the officer. That's correct. I mean, the suspect would presumably know it. That's correct, Your Honor. Might or might not know the consequences of a crime, but would know that. But until the officer runs his name, runs his biographical information, he would not know. He, the officer, would not know that this is somebody who is committing a crime. That's absolutely correct, Your Honor. Even if he says, I am from Mexico and I came over the border illegally, that would not be a crime. Correct. Help me out here. If that's all the officer knows and it turns out that's all the facts there are, would he have probable cause to, I guess he would have a probable cause to detain him in order to take him back across the border, right? Correct. Correct. Would that be an arrest? What would that be? There's no crime involved at the same time you can't, it would be a border stop, right? It would fall within the classic cases, Galindo Gallegos, the Cervantes Flores case in Medina Villa, where it is a terry stop, an investigatory detention in which these basic biographical questions can be asked. And then at some point afterwards, it might ripen into an arrest. Say, for example, as I was mentioning, the transportation to the border patrol station for additional processing and so on. But in this case, Your Honor, it was a terry stop. I'm sorry. The transportation to the border station would happen even if the officer were convinced that this is not a crime. No, Your Honor. Well, that would depend. Well, that's the thing. What Judge Kosinski says, you question somebody, you become convinced it's not a crime, but you're not going to let him go because he's here illegally. If there was no probable cause. Well, to what? For the crime of illegal reentry. All right. We're positing that there's no probable cause for illegal reentry, but you know he's entered illegally. What do you do? You say, go on your way, we're happy to have you, we welcome you? That would be. Go commit a crime so we can arrest you? I would assume that the procedure would be. You're from the government. You're here to tell us. Correct. Well, the government's position changes from day to day on this now. Custody would, I think the procedure would be, civil proceedings would be initiated. Yes, but how would you get them to those procedural proceedings? Would you say, I'll call a cab for you and will you go there? It would involve the same. Uber. Uber, yes. Or would you arrest them? Immigration and Customs Enforcement. So that's the question. Is that an arrest? Is that a civil detention? What is it? Under this standard, the reasonable innocent person standard, I think that would be akin to an arrest. Isn't the question more whether they're in custody rather than whether they're technically arrested? Correct, and sort of the standards blur together in certain cases. But, you know, he's clearly in custody when he's handcuffed and he's there, but we've said that that's still a Terry stop. And while it's a Terry stop, even though he's handcuffed and he's not free to leave, we say it's not an arrest. At some point, after that, you've made your Terry stop, you put him in handcuffs, and you find out he's here illegally. What do you do with him? You either turn him loose or you convey him to somebody. You give him to the tender mercies of ICE. Do you do that through a process of arresting him? Or is it an arrest when you transport him to ICE in handcuffs? Is that an arrest? Is that more than a Terry stop? The transportation process, I think, would become more than a Terry stop given the circumstances of the case. So at that point, they give him Miranda warnings. They say, we're convinced you haven't committed a crime, but we're going to give you Miranda warnings. I don't know. Maybe that's the right answer. Well, in the abundance of caution, there would be nothing wrong with that. Let's deal with a lot of ICE agents. What do they think they're doing? They're getting rid of undesirable people. Don't look at me when you say that. Do you ever hear of a statute of limitations? Your Honors, I see that my time is up. Congratulations. What do you think made this an arrest or the kind of custody where you can't? I think in this case, we have to listen to what the officer said, and I would like to point your attention to statements that the officer did make. On the appellant's excerpt of record on page 78, he states the question. What line 78? We'll start with line 4. I'd like to point your attention to that. Weren't these questions that you asked in the I-826 asked subsequent to his arrest? His answer, yes. Did you know that these questions would have ascertained information that could have been used later? He asked to rephrase that, question 12. Did you ask questions that would have elicited information that you knew could have been used in a criminal trial in the future? I suppose I did, yeah. And then on page 205, during cross, line 23. And in your prior testimony, you filled this out after Mr. Arce had been arrested. Is that correct? Yes. And this is relating to the I-286, which was the government's Exhibit 1. Was he saying that he filled out the form contemporaneously? I don't know the answer. He asked some questions, and at some point he put the answer to those questions in the form. Is the implication here that he filled out the form right there as he was asking the questions, or is it he jotted down information and then later on at some point Mr. Arce is arrested and then the officer fills out the form? Well, I think if you look at both, the questions that were asked were after, he stated were after his arrest. And he said that he also filled out the form after his arrest. I mean, one problem is you didn't give any of these citations in your brief. You made, huh? You have a quote from 77-78. You don't give the citation. This is page 10 and 11 of your brief? I believe it is. I quoted what the officer had stated. Well, I'm trying to tie in what you said, what he has in 405. Yes. You don't explain it in your brief. Is it clear that he filled out the form there on the spot, or is it that he took the information down on the spot and then filled out the form after his arrest? I think that the information on 205 is just a confirmation or reiteration of what he stated earlier in the motion hearing of his testimony, that Mr. Arce was under arrest before he asked him any questions. So any information on that form he would have gotten after he had been arrested already. Okay. Counsel, if this information, these statements, had been suppressed, what impact do you think it would have had on the verdict? Well, I think if the judge had found that there was a violation of his due process, then another motion to consider a dismissal could have been made. But I'm asking you about the weight of the evidence and whether or not there was sufficient evidence, even in the absence of the statements that he made to the officer. I can't decide what a jury would state in light of the other evidence, but not having the agent there at the time state that this is what this person said and using that against them. But was other evidence, independent evidence from that statement, admitted that proved his identity and where he was born and the other elements of the offense? Yes, Your Honor. Thank you. Thank you. Thank you, Counsel. The case just argued will be submitted.
judges: Reinhardt, Kozinski, Berg